# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Verisign, Inc., *Plaintiff*, v. XYZ.com, LLC and Daniel Negari, *Defendant*. | C.A. NO. |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO QUASH NONPARTY SUBPOENAS TO NONPARTIES KEY BRAND ENTERTAINMENT, INC. AND KBE GTLD HOLDING, INC. UNDER RULE 45 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Dated: July 2, 2015

Kenneth L. Dorsney (I.D. #3726)
**Morris James LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
kdorsney@morrisjames.com

Derek A. Newman (to be admitted *pro hac vice*)
Derek Linke (to be admitted *pro hac vice*)
**Newman Du Wors LLP**
2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800
dn@newmanlaw.com
linke@newmanlaw.com

**ATTORNEYS FOR DEFENDANTS
XYZ.COM, LLC AND DANIEL NEGARI**

**Table of Contents**

I.     Statement of the Nature and State of Proceedings ......................................... 1

II.    Introduction and Summary of Argument ....................................................... 1

III.   Statement of Facts ............................................................................................ 2

    A.    Verisign sued XYZ in the Eastern District of Virginia for alleged false advertising in violation of the Lanham Act. ................................................ 2

    B.    Verisign's subpoenas demand all-but immediate production of highly sensitive documents and trade secrets that have no relevance to Verisign's false-advertising claim. ............................................................................................ 3

IV.   Argument .......................................................................................................... 5

    A.    The Subpoenas fail to allow reasonable time to comply. ............................ 5

    B.    The Subpoenas require disclosure of protected material and confidential, commercially valuable information (including XYZ's trade secrets)—and the information is irrelevant to Verisign's claim in the underlying Action. ...................... 6

        1.    The Subpoenas seek disclosure of XYZ's confidential information and trade secrets to its competitor, Verisign. ............................................. 7

        2.    Verisign has no legitimate need for the requested materials because the information sought irrelevant to the underlying Action. ................................... 7

    C.    The Subpoenas are part of a pattern and practice by Verisign that appears designed to avoid the due process protections built into the civil rules. ..................... 8

V.    Conclusion ........................................................................................................ 8

## I.  Statement of the Nature and State of Proceedings

This is motion to quash two third-party subpoenas on served on Key Brand Entertainment, Inc., and its wholly owned subsidiary KBE gTLD Holding, Inc. (together "KBE"). The subpoenas were served by Verisign, Inc., the plaintiff in the underlying action of *Verisign, Inc. v. XYZ.com, LLC et al.*, Easter District of Virginia Case No. 1:14-cv-01749 (the "Action"). Defendants XYZ.com, LLC and Daniel Negari (together "XYZ") respectfully request the Court quash the subpoenas for the reasons described below.

## II.  Introduction and Summary of Argument

XYZ respectfully requests that the Court quash Verisign's subpoenas on KBE for at least four reasons.

1. **The Subpoenas Impose an Unreasonable Timeframe.** Verisign served its subpoenas on Wednesday, July 1 but is demanding compliance by Monday, July 6—notwithstanding the fact that July 3 is a federal holiday, July 4 is Independence Day and July 5 is a Sunday. This timeline is unreasonable on its face and requires the Court to quash the subpoenas under Rule 45(d)(3)(A)(i).

2. **The Subpoenas Seek Disclosure of XYZ's Trade Secrets and Confidential Information.** Many of the documents targeted by Verisign's subpoenas contain XYZ's valuable trade secrets—in fact several of these documents are governed by a confidentiality agreement forbidding KBE from disclosing them for this very reason. This permits the Court to quash the subpoenas under Rule 45(d)(3)(B)(i).

3. **The Subpoenas Seek Information That Is Not Relevant To The Underlying Action.** The information sought by Verisign's subpoenas has no relevance to Verisign's underlying lawsuit in the Eastern District of Virginia. Verisign's single claim against XYZ in that lawsuit is

for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). But the subpoenas appear to be targeted at obtaining information about a sensitive, confidential business transaction between XYZ and KBE that has nothing to do with Verisign's allegations.

**4. Verisign Should Instead Request These Documents From XYZ.** Many of requests appear to target documents that Verisign could also seek from XYZ. If Verisign truly believes it is entitled to this information then it should file discovery requests in the underlying matter so that the parties can litigate the issue without burdening third-parties and unrelated courts.

For these reasons (as discussed more fully below) XYZ respectfully requests the Court grant its motion to quash Verisign's unreasonable subpoenas.

### III. Statement of Facts

**A. Verisign sued XYZ in the Eastern District of Virginia for alleged false advertising in violation of the Lanham Act.**

Verisign filed its lawsuit against XYZ and Negari alleging false advertising under the federal Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (Action, Complaint, Dkt. 1[1]) Verisign is a domain name registry that operates the "infrastructure for a portfolio of top-level domain names [TLDs] that today includes .COM, .NET, .TV, .CC, .NAME, .JOBS, .EDU, and .GOV." (*See* Complaint at ¶11.) Defendant XYZ is "the registry operator of the newly launched .XYZ domain extension," and Defendant Daniel Negari "is the Chief Executive Officer and founder of XYZ." (*Id.* ¶¶ 13–14.)

Verisign complains that "XYZ has launched a promotional campaign that is designed to suggest that it is superior to Verisign." (*Id.* ¶ 16.) In essence, Verisign believes that XYZ is unfairly promoting the .XYZ domain extension at the expense of Verisign's .COM.

---

[1] A copy of Verisign's Complaint in the Action is attached as Exhibit A to the Declaration of Derek Linke in Support of Motion to Quash filed herewith.

Verisign's Complaint lists a handful of allegedly false statements made in blog posts, press interviews, and other contexts that it claims caused it harm. For example, Verisign complains that Negari posted an entry on his personal website blog entitled ".XYZ is the NEXT .COM – BELIEVE IT." (*Id.* ¶¶ 32–33.) Similarly, it alleges that Negari, when interviewed by NPR for a segment about the recent availability of new top-level domain names (like .XYZ), described .COM as having few desirable domain names left: "[a]ll of the good real estate is taken. The only thing that is left is something with a dash, or maybe three dashes and a couple numbers in it." (*Id.* ¶ 27.) Verisign also complains about XYZ's claim to be the "number one" new top-level domain name. (*Id.* ¶ 53(a).) Verisign claims that statement is false because many .XYZ domains were given away by a third party. (*Id.* ¶ 55.) Verisign concludes that it has been injured by XYZ's various promotional statements but does not explain how. (*See id.* ¶¶ 4, 74–75.)

**B.   Verisign's subpoenas demand all-but immediate production of highly sensitive documents and trade secrets that have no relevance to Verisign's false-advertising claim.**

On Wednesday, July 1, Verisign served functionally identical documents subpoenas on Key Brand Entertainment, Inc. and its subsidiary KBE gTLD Holdings, Inc, and provided a courtesy copy of the same to XYZ later that afternoon. (See Linke Decl. ¶ 3, Exs. B-1, B-2 (the "Subpoenas").) Verisign's Subpoenas demand production of documents by Monday, July 6. Because of the July 4 holiday, the subpoenas effectively provided KBE with only one business day to respond—and XYZ less than 24 hours to prepare, file and serve this Motion.

The Subpoenas target the following categories of documents:

1.   All non-privileged documents related to the sale of the .THEATRE top level domain name and communications with Defendants XYZ.COM, LLC and Daniel Negari relating to or arising therefrom.

2.   Any agreements between KBE and XYZ related to the .THEATRE top level domain.

3. Any agreement between KBE and CentralNic related to the .THEATRE top level domain.

4. Any written communications between KBE and XYZ that reference Verisign.

5. Any written communications between KBE, and XYZ, referencing .PROTECTION or .SECURITY.

None of these topics are related to Verisign's allegations in the underlying Action. Verisign's false-advertising claim is predicated on statements by XYZ to *consumers*—*i.e.* end-users who register domain names. By contrast, the Subpoenas target documents arising from a transaction between XYZ and KBE (another domain registry operator) relating to acquisitions of other top level domains. The requested documents are simply irrelevant to Verisign's lawsuit.

Alarmingly, many of the documents sought contain XYZ's confidential and highly sensitive information and trade secrets. (Declaration of Daniel Negari ("Negari Decl.") ¶ 7.) XYZ goes to great length to protect this information—indeed, XYZ's trade secrets and confidential information are its primary assets. (Negari Decl. ¶ 5.) For example, XYZ only works with partners that sign strict non-disclosure agreements and requires its employees to maintain the details of its business relationships strictly confidential. (*Id.*) In fact, XYZ and KBE executed a non-disclosure agreement prior to entering negotiations for the transaction targeted by the Subpoenas and the transaction agreement itself contains an express provision obligating KBE to maintain the document's confidentiality. (*Id.* ¶ 8.)

Moreover, these Subpoenas are simply the latest in a series—more than a dozen in total—that Verisign has served on non-parties. (Linke Decl. ¶ 4.) And, like many of the subpoenas before them, these Subpoenas seek information that Verisign could just as easily seek via discovery requests to XYZ. (*See id.* ¶ 5.) (For example, documents responsive to Categories 2, 4, and 5 of the Subpoenas are just as likely to be in XYZ's possession as they are KBE's.) XYZ has

previously confronted Verisign about this troubling pattern and practice and asked for an explanation of why Verisign was seeking the information via third-party subpoenas instead of through discovery requests to XYZ and Negari. (*See id.* ¶ 6.) At that time, Verisign's counsel provided only one reason: Verisign believed it could obtain responses from a nonparty more quickly than it could via a request for production. (*See id..*) Indeed, the Subpoenas at issue here take that practice to an extreme—providing less than two business days for KBE to produce XYZ's highly sensitive, commercially valuable information. But such unseemly haste flies in the face of the due process concerns underpinning the civil discovery rules.

### IV.   Argument

A court must quash or modify a subpoena that either "(i) fails to allow reasonable time to comply; [… or] (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies […]" Fed. R. Civ. P. 45(d)(3)(A)(i), (iii). A court may quash or modify a subpoena if the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(3)(B)(i).

Here, there are multiple reasons to quash the Subpoena:

1.   The Subpoenas fail to allow a reasonable time to comply;

2.   The Subpoenas seek information that constitutes confidential information and trade secrets;

3.   The Subpoenas seek information that is not relevant to Verisign's lawsuit against XYZ; and

4.   The Subpoenas are part of a pattern and practice by Verisign to avoid the due process protections afforded by the civil discovery rules.

**A.   The Subpoenas fail to allow reasonable time to comply.**

The Subpoenas were served on Wednesday, July 1, 2015. They command production five

days later: on Monday, July 6. One of those days (Friday, July 3) is a federal holiday. Another is a Saturday *and* Independence Day. And the penultimate day falls on a Sunday. In effect, there is only *one* business day between service of the Subpoenas and the compliance deadline. If this is a "reasonable time to comply" then the requirement is virtually meaningless. Per the plain text of Rule 45, the Court *must* quash the Subpoenas on this ground alone. Fed. R. Civ. P. 45(d)(3)(A)(i).

**B.     The Subpoenas require disclosure of protected material and confidential, commercially valuable information (including XYZ's trade secrets)—and the information is irrelevant to Verisign's claim in the underlying Action.**

This Court may also quash any subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also* Fed. R. Civ. P. 45(d)(3)(B)(i); *Feldman v. Cmty. Coll. of Allegheny (CCAC)*, 85 F. App'x 821, 827 (3d Cir. 2004). Information may be deemed protected if it "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure." Del. Code Ann. tit. 6, § 2001(4)(a)(2001); *see also Proctor & Gamble Co. v. Nabisco Brands, Inc., et al.*, 111 F.R.D. 326 (D.Del.1986). Disclosure to a competitor is presumed more harmful than disclosure to a non-competitor. *Coca Cola Bottling Co. v. The Coca Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985).

If it is established that the sought information constitutes confidential commercial information and that disclosure would be harmful, the burden shifts to the party seeking discovery to establish that disclosure of the trade secret is relevant and necessary to the litigation. *Id*. at 292. Disclosure of the evidence is considered necessary when the information is required "for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories." *Id*. at 293.

- 6 -

1. **The Subpoenas seek disclosure of XYZ's confidential information and trade secrets to its competitor, Verisign.**

There is little doubt the Subpoenas call for production of protected confidential commercial information. Verisign seeks all agreements and written communications about a commercial transaction of its competitor, XYZ. The requested documents necessarily include highly confidential financial and sales information, costs and expenditures. Several potentially responsive documents—including the sales agreements themselves contain express provisions obligating the parties to maintain the documents' confidentiality.

Due to the highly competitive nature of the domain registry industry, it is imperative that XYZ's primary competitor—Verisign—not have access to information about transactions with customers that Verisign presumably hopes to poach. To effectively compete, XYZ must engage in many types of sales and marketing practices, including competitive pricing and creative deal making. XYZ will surely sustain irreparable economic harm if its trade secrets and confidential information are disclosed to Verisign.

2. **Verisign has no legitimate need for the requested materials because the information sought irrelevant to the underlying Action.**

Where a party has subpoenaed a nonparty, " '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008).

Here, the the Subpoenas seek information that is unrelated to Verisign's false advertising claim. Verisign's allegations are tied to XYZ's allegedly false or misleading statements to potential consumers of domain registrations. But Verisign's Subpoenas seek no information related to XYZ's statements to consumers. Instead the Subpoenas target documents related to a business-to-business transaction between XYZ and KBE, and documents related to KBE's use of

CentralNic (instead of Verisign) to provide backend registry services. These topics have nothing to do with consumers registering domains in general, let alone the statements allegedly promoting .XYZ and disparaging .COM at issue in the Action. Accordingly, the evidence will neither help Verisign prepare its case for trial or prove its theories and the Subpoenas should be quashed.

C. **The Subpoenas are part of a pattern and practice by Verisign that appears designed to avoid the due process protections built into the civil rules.**

Verisign's persistent use of non-party subpoenas to obtain highly sensitive, commercially valuable information that it could (and should) seek from XYZ suggests an improper motive. Indeed, Verisign's counsel has represented that it uses the subpoenas to avoid the lapse in time associated with Requests for Production under Rule 34. But Rule 34's discovery mechanisms serve the interests of due process in several important ways. First, it places the burdens of discovery where they belong—on the parties themselves. Second, by providing a reasonable response-time, it ensures the parties will be able to comply with discovery obligations without sacrificing legitimate interests in protecting sensitive information. And third, when disputes arise under Rule 34, they are resolved by the same Court charged with adjudicating the underlying lawsuit—this promotes judicial economy and consistent results, two fundamental tenants of our judicial system.

## V.     Conclusion

There are numerous reasons for the Court to quash the Subpoenas. Chief among them, the Subpoenas only provide one business day to produce a substantial number of documents, which is patently unreasonable, in violation of Rule 45. Just as importantly, the Subpoenas call for the disclosure of XYZ's confidential, commercially valuable information and trade secrets to a direct competitor. And the information sought is irrelevant to Verisign's ability to prosecute its

underlying claim for false advertising. Finally, these subpoenas are only the latest and most egregious example of a pattern and practice by Verisign of using non-party subpoenas to try to obtain irrelevant information from third-parties, thereby sidestepping important due process protections and undermining the integrity of the legal system.

The Court should block Verisign's unreasonable attempt to harass an unrelated third party into turning over XYZ's confidential trade secrets and other information wholly unrelated to the underlying Action. XYZ respectfully requests that the Court grant its motion to quash Verisign's subpoenas.

Dated:  July 2, 2015                    By:  */s/ Kenneth L. Dorsney*
                                        Kenneth L. Dorsney (I.D. #3726)
                                        **Morris James LLP**
                                        500 Delaware Avenue, Suite 1500
                                        Wilmington, Delaware 19801
                                        (302) 888-6800
                                        kdorsney@morrisjames.com

                                        Derek A. Newman (to be admitted *pro hac vice*)
                                        Derek Linke (to be admitted *pro hac vice*)
                                        **Newman Du Wors LLP**
                                        2101 Fourth Avenue, Suite 1500
                                        Seattle, Washington 98121
                                        (206) 274-2800
                                        dn@newmanlaw.com
                                        linke@newmanlaw.com

                                        **ATTORNEYS FOR DEFENDANTS XYZ.COM, LLC AND DANIEL NEGARI**